FILED

2020 Aug-12  PM 02:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **DONALD BRASHER, individually and on behalf of all others similarly situated,** | } } } } | |
| **Plaintiff,** | } } | |
| **v.** | } } | **Case No.:  4:18-cv-00576-ACA** |
| **ALLSTATE INDEMNITY COMPANY,** | } } } | |
| **Defendant.** | } } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

A storm damaged Plaintiff Donald Brasher's home in St. Clair County, Alabama.  Mr. Brasher filed a property damage claim with Defendant Allstate Indemnity Company ("Allstate").  Under the terms of Mr. Brasher's policy, Allstate settles claims on an "actual cash value" basis.  Allstate denied Mr. Brasher's claim because after depreciating the cost of materials and labor, the actual cash value of Mr. Brasher's claim was less than his deductible.

Mr. Brasher filed this putative class action lawsuit claiming that by depreciating labor costs, Allstate breached the terms of his insurance contract and

was unjustly enriched.[1]   He seeks to represent similarly situated Allstate policyholders in Alabama who also had labor depreciation deducted from actual cash value claim payments.

Pending before the court is Mr. Brasher's motion for certification of a Rule 23(b)(3) class for breach of contract and appointment of class counsel.  (Doc.  64).

In addition, the parties have filed the following motions to exclude the others' experts pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993):  (1) Allstate's motion to exclude the opinion testimony of Chris Hatcher and Jason Wells (doc. 75); (3) Mr. Brasher's motion to strike and exclude the opinion testimony of Don Odom (doc. 78); and (3) Mr. Brasher's motion to exclude the opinion testimony of Victoria Roberts (doc. 79).

The parties also have filed two other motions to strike the other's evidence: (1) Allstate's motion to strike paragraphs 6 and 7 of Colby Graff's declaration (doc. 72) and (2) Mr. Brasher's motion to strike paragraphs 9, 10, 11, and 13 of Mr. Odom's declaration (doc. 82).

The court held a hearing on the motions on June 17, 2020.  Having considered the parties' written and oral arguments, the court issues this opinion to explain why class certification is not appropriate.

---

[1] In his complaint, Mr. Brasher also asserted a conversion claim against Allstate.  The court has dismissed that claim.  (Doc. 29).

First, with respect to the parties' evidentiary challenges, the court:

(1) **GRANTS** in part and **DENIES** in part Allstate's motion to exclude the opinion testimony of Mr. Hatcher and Mr. Wells.  (Doc. 75).  The court **DENIES** as **MOOT** the motion, to the extent Allstate seeks to exclude Mr. Hatcher's opinion that labor should not be depreciated because the court has not considered this opinion for purposes of ruling on class certification.  The court **GRANTS** the motion, to the extent Allstate seeks to exclude Mr. Hatcher's opinion about the amount of labor depreciation applied to class members' property damage claims because the opinion in unreliable.  The court **GRANTS** the motion to exclude Mr. Wells' testimony, to the extent his calculations are based on Mr. Hatcher's unreliable opinion;

(2) **DENIES** Mr. Brasher's motion to exclude the opinion testimony of Mr. Odom (doc. 78), to the extent Mr. Brasher seeks to exclude the opinion for failure to provide a written report and **DENIES** as **MOOT** the motion, to the extent Mr. Brasher's claims the opinions do not pass a *Daubert* test because the court has not relied on Mr. Odom as an expert witness for purposes of ruling on class certification;

(3) **DENIES** as **MOOT** Mr. Brasher's motion to exclude Ms. Roberts' opinions (doc. 82), to the extent Mr. Brasher challenges the cited portions of her

testimony because the court has not relied on those opinions for purposes of ruling on class certification;

(4) **DENIES** as **MOOT** Allstate's motion to exclude paragraphs 6 and 7 of Colby Graff's declaration (doc. 72) because the court has not relied on the disputed portions of Mr. Graff's declaration in ruling on class certification;  and

(5) **DENIES** Mr. Brasher's motion to strike paragraphs 9, 10, 11, and 13 of Mr. Odom's declaration (doc. 82) because the declaration does not contain new or contradictory opinions, and even if it did, Mr. Brasher is not prejudiced by the new opinions because the court has not relied on the disputed portions of Mr. Odom's declaration for purposes of ruling on class certification

Second, the court **DENIES** Mr. Brasher's motion for class certification (doc. 64) because Mr. Brasher has not established that common issues predominate over individual questions as required by Federal Rule of Civil Procedure 23(b)(3).

## I.  BACKGROUND

Mr. Brasher purchased a Manufactured Home Policy from Allstate, with an effective date of May 18, 2014.  (Doc. 119-10).  Pursuant to the Policy, Allstate agreed to "pay when a covered loss exceeds the deductible shown on the Policy Declarations.  We will then pay only the excess amount, unless we have indicated otherwise in this policy."  (Doc. 119-10 at 40).  Mr. Brasher's deductible was

$2,500.00, so Allstate would pay for a covered loss to the premises when the loss exceeded the $2,500.00 deductible.  (Doc. 119-10 at 2).

The Policy contains a section titled "How We Pay For a Loss."  (Doc. 119-10 at 41).  As amended by a Policy Endorsement, this provision of the Policy provides:

> Loss to property insured by this policy under **Coverage A – Dwelling Protection**, **Coverage B – Other Structures Protection**, and **Coverage C – Personal Property Protection** will be settled on an actual cash value basis.  This means there may be a deduction for depreciation.  Payment will not exceed the smallest of:
>
> a)   the actual cash value of the damaged, destroyed or stolen property at the time of loss;
> b)   the amount necessary to repair or replace the damaged, destroyed or stolen property with other of like kind and quality; or
> c)   the limit of liability applicable to the damaged, destroyed or stolen property.

(Doc. 119-10 at 53) (emphasis in original).

In a document attached to the Policy that outlines the provided coverage, Allstate explains how it calculates the actual cash value ("ACV") of a property damage claim.  (Doc. 119-10 at 11).  If Allstate determines that damage is "repairable" or a "partial loss," then Allstate "generally determines ACV through the method of replacement cost at the time of loss, less depreciation."  (*Id.*).  If Allstate determines that damage is "non-repairable" or a "total loss," then Allstate "may determine ACV through the method of replacement cost at the time of loss,

less depreciation, or it may determine ACV by securing and considering a residential appraisal, which may include an analysis of market value." (*Id.*).

The Policy includes a definition section that defines certain terms that appear in the Policy.  (Doc. 119-10 at 24–25).  Neither "actual cash value" nor "depreciation" is defined.  (*See id.*).

In November 2014, a storm caused a tree limb to fall on Mr. Brasher's property.  (Doc. 119-17 at 18–19).  The limb damaged Mr. Brasher's roof, fence, and bathroom.  (Doc. 119-11; Doc. 119-17 at 18–20).  Mr. Brasher submitted a claim to Allstate, and an Allstate adjuster inspected the property for loss and prepared an estimate for repairs.  (Doc. 119-11; Doc. 119-17 at 22–23).  Allstate estimated that repairing Mr. Brasher's property would cost $5,040.58.  (Doc. 119-11 at 5).

Allstate calculated the "actual cash value" of Mr. Brasher's claim by depreciating materials and non-materials from the repair estimate.  Using this calculation – repair estimate ($5,040.48) minus depreciation ($2,594.51) – Allstate concluded that the "actual cash value" of the claim ($2,446.07) was less than Mr. Brasher's $2,500.00 deductible.  (Doc. 119-11 at 5).  Therefore, although Allstate determined that coverage existed for the claim, Mr. Brasher did not receive payment from Allstate for the repairs because the "actual cash value" was less than Mr. Brasher's deductible.  (*Id.*; Doc. 119-19 at 23).

6

Mr. Brasher filed this lawsuit, alleging that by depreciating labor costs from the actual cash value of his claim, Allstate breached the Policy and was unjustly enriched.  (Doc. 1).  Mr. Brasher now seeks to represent the following class of individuals:

> [A]ll Allstate Indemnity Company property insurance policyholders who submitted a claim for structural property damage in Alabama, and whose ACV payment was reduced by the withholding of labor depreciation and who did not receive a subsequent replacement cash value payment for the amount of that withheld labor depreciation, or whose claim failed to meet the deductible after labor depreciation was deducted from the claim estimate, during the time period from February 28, 2012, to the date of trial.[2]

(Doc. 65 at 9).

Members of the proposed class purchased one of the following nine policy types that Allstate sells in Alabama: (1) Deluxe Homeowners Policy; (2) Deluxe Plus Homeowners Policy; (3) Standard Homeowners Policy; (4) Deluxe Select Homeowners Policy; (5) Standard Select Value Homeowners Policy; (6) Manufactured Home Policy; (7) Standard Mobilehome Policy; (8) Deluxe Mobilehome Policy; or (9) Landlord Package Policy.  (Docs. 119-1; 119-2; 119-3; 119-4; 119-5; 119-6; 119-7; 119-8; 119-9).

---

[2] Certain classes of policyholders are excluded from the class.  Relevant to this analysis, excluded classes include policyholder who received their full policy limits; policyholders who received a subsequent payment for the RCV that included all amounts withheld for labor depreciation; and policyholders whose ACV amount does not exceed the deducible amount after removal of labor depreciation.

Seven of the nine policies—the Deluxe Homeowners Policy, the Deluxe Plus Homeowners Policy, the Standard Homeowners Policy, the Deluxe Select Homeowners Policy, the Standard Select Value Homeowners Policy, the Manufactured Home Policy, and the Landlord Package Policy—are commonly called "replacement cost value" policies or RCV policies.  (Docs. 119-1; 119-2; 119-3; 119-4; 119-5; 119-6; 119-9).  RCV policies provide an insured with "the cost of replacement or repair of property covered under the contract."  (Doc. 119-19 at 7).

RCV policyholders generally receive payment for covered losses in two phases.  Unless Allstate chooses to make a payment for a covered loss before the insured repairs, rebuilds, or replaces the damaged property, Allstate first pays a claim on an "actual cash value" basis.  (Doc. 119-1 at 15; Doc. 119-2 at 15–16; Doc. 119-3 at 12; Doc. 119-4 at 15; Doc. 119-5 at 12; Doc. 119-6 at 18; Doc. 119-9 at 13).  The RCV policies state that an "actual cash value" payment "means there will be a deduction for depreciation."  (Doc. 119-1 at 15; Doc. 119-2 at 16; Doc. 119-3 at 12; Doc. 119-4 at 15; Doc. 119-5 at 12; Doc. 119-6 at 18; Doc. 119-9 at 13).

Then, if the insured repairs or replaces the damaged property "within 180 days of the actual cash value payment," Allstate may make an additional payment to the insured for the replacement cost if the insured submits a claim for payment

in addition to the "actual cash value" amount.  (Doc. 119-1 at 15–16; Doc. 119-2 at 16; Doc. 119-3 at 12–13; Doc. 119-4 at 16; Doc. 119-5 at 12–13; Doc. 119-6 at 18; Doc. 119-9 at 13).   The replacement cost payment includes any amounts depreciated from the actual cash value payment.  (Doc. 119-19 at 41).

Two of the nine policies—the Standard Mobilehome Policy and the Deluxe Mobilehome Policy—are known as "actual cash value" policies or ACV policies. (Docs. 119-7; 119-8).  An ACV policy "is one that pays actual cash value of covered damages or loss at the time of settlement with no benefit for replacement cost recovery, a recovery for depreciation."  (Doc. 119-19 at 7).   The ACV policies contain a provision stating that "[i]n making an actual value settlement, payment will not exceed the smallest of the following amounts: a) The actual cash value at the time of the loss; b) The amount necessary to repair or replace the damaged property; or c) The limit of liability applying to the property."  (Doc. 119-7 at 9; Doc. 119-8 at 10).

In addition, Allstate offers an ACV endorsement to some of its RCV policies, which replaces the "replacement cost value" language and states that losses are settled on an "actual cash value" basis.  (Doc. 119-19 at 14).   For example, Mr. Brasher's policy was a RCV Manufactured Home Policy with an ACV endorsement.  (Doc. 119-10 at 53).  Like the ACV policies, Mr. Brasher's

ACV endorsement states that an ACV payment will not exceed the smallest of the actual cash value, the actual cost of repair, or the limit of liability.  (*Id.*).

When Allstate adjusts a property claim, ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████[3]

To make that determination, an Allstate adjuster creates an estimate using property adjustment software called Xactimate.  (Doc. 119-21 at 10–11; Doc. 119-19 at 25).  █████████████████████████████, Xactimate automatically pre-populates depreciation settings to include depreciation for materials, non-materials, tax, overhead, and profit.  (Doc. 119-19 at 35–37; Doc. 119-41).  When selected, the non-material depreciation setting in Xactimate applies depreciation to three different costs of a line item:  labor, equipment, and market conditions.   (Doc. 119-19 at 48; Doc. 119-25 at 6).

Once an ACV estimate is completed in Xactimate, it is uploaded to Allstate's claims processing system.  (Doc. 119-19 at 17, 30).  ██████████████ ████████████████████████████████████████████████████

---

[3] ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████

████████████████████████████████████.  (Doc. 119-19 at 22, 51–52;

Doc. 119-21 at 19, 22).

## II.    EVIDENTIARY CHALLENGES

1.    _Daubert_ Motions

Both parties have proffered experts in support of their respective positions

on class certification, and both parties challenge the admissibility of the other's

expert testimony.  Federal Rule of Evidence 702 and the Supreme Court's decision

in _Daubert v. Merrell Dow Pharmaceuticals, Inc._, 509 U.S. 579 (1993), governs

admissibility of expert testimony.

Under Rule 702, a qualified witness may offer expert opinion testimony if:

"(a) the expert's scientific, technical, or other specialized knowledge will help the

trier of fact to understand the evidence or to determine a fact in issue; (b) the

testimony is based on sufficient facts or data; (c) the testimony is the product of

reliable principles and methods; and (d) the expert has reliably applied the

principles and methods to the facts of the case."  Fed. R. Evid. 702.

"A trial court assessing the reliability of an expert's evidence" under Rule

702 must "perform a 'gatekeeping' function by conducting 'a preliminary

assessment of whether the reasoning or methodology underlying the testimony is

scientifically valid and of whether that reasoning or methodology properly can be

applied to the facts in issue.'"  _Hendrix ex rel. G.P. v. Evenflo Co., Inc._, 609 F.3d

1183, 1194 (11th Cir. 2010) (quoting *Daubert*, 509 U.S. at 592–93).   The

performance of this function requires courts in this circuit to conduct a "rigorous

three-part inquiry" evaluating whether:

> (1) the expert is qualified to testify competently regarding the matters
> he intends to address; (2) the methodology by which the expert
> reaches his conclusions is sufficiently reliable as determined by the
> sort of inquiry mandated in *Daubert*; and (3) the testimony assists the
> trier of fact through the application of scientific, technical, or
> specialized expertise, to understand the evidence or to determine a
> fact in issue.

*Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010)

(quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)).

The Eleventh Circuit has suggested that the district court must engage in a

*Daubert* analysis if an expert's testimony is critical to resolving class certification

issues.  *See Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions

Fin. Corp.*, 762 F.3d 1248, 1258 n. 7 (11th Cir. 2014) (*citing Am. Honda Motor

Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010)); *Sher v. Raytheon Co.*, 419 F.

App'x. 887, 890-91 (11th Cir. 2011) (adopting the Seventh Circuit's *American

Honda* rationale and vacating a grant of class certification for failure to conduct a

*Daubert* analysis).

a.    ***Allstate's Motion to Exclude Testimony of Chris Hatcher and Jason Wells (Doc. 75)***

i.    Chris Hatcher

In support of his motion for class certification, Mr. Brasher relies on expert testimony from Chris Hatcher concerning the determination of the amounts of labor depreciation applied to class members' property damage claims.  (Doc. 119-24; Doc. 119-25).

Mr. Hatcher is the founder, CEO, and Lead Trainer of Top Adjuster which specializes in the private training in property adjustment and Xactimate Certification courses for property insurance professionals.  (Doc. 119-25 at 1).

Allstate attacks two of Mr. Hatcher's opinions.  First, Allstate challenges Mr. Hatcher's opinion that labor should not be depreciated when calculating actual cash value.  (Doc. 107 at 7, 16–20).  This opinion is not necessary to establish a Rule 23 requirement, and the court has not considered it for purposes of ruling on the motion for class certification.  Therefore, the court **DENIES** as **MOOT** Allstate's motion to exclude Mr. Hatcher's testimony, to the extent Allstate seeks to exclude Mr. Hatcher's opinion about whether labor should be depreciated. Allstate may renew its motion on this basis, if necessary, at a later stage in the proceeding.

Second, Allstate challenges Mr. Hatcher's opinion that "through the use of Xactimate and Next-Gen, it is feasible to determine . . . whether labor depreciation

13

was applied to a particular claim and to calculate what the ACV amount, if any, would have been for policyholders had Allstate not depreciated labor costs." (Doc. 107 at 20–21) (quoting Doc. 119-25 at 10). Allstate argues that this opinion is not reliable. The court agrees.

The non-material depreciation setting in Xactimate is comprised of three components: labor, equipment costs, and market conditions. (Doc. 119-24 at 20; Doc. 119-25 at 6). Xactimate does not separate labor depreciation from equipment costs and market conditions depreciation, and a user is unable to turn off a labor depreciation component of the non-material depreciation category because it does not exist. (Doc. 119-24 at 20-21, 26–27). Therefore, Mr. Hatcher is unable to use Xactimate to identify the amount of labor depreciation for any class claim and isolate that value from depreciation for equipment and market conditions to determine what a policy holder's ACV payment would have been but for the depreciated labor cost.

Mr. Brasher responds that in Mr. Hatcher's opinion, "non-material depreciation is entirely labor cost." (Doc. 91-1 at 13) (citing Doc. 119-25 at 6). However, this opinion is unreliable as well.

Mr. Hatcher states that non-material depreciation is exclusively labor cost because both equipment and market conditions are rarely used by field adjusters and estimators, and if they are, would be very small amounts and are almost never

depreciated.  (Doc. 119-25 at 6).  Mr. Hatcher bases this conclusion on 20 years of experience as a field adjuster for various insurance companies and his "spot check" of six sample class claims.    (Doc. 119-24 at  3–5, 21, 25–26).  But both of these methodologies are inadequate to support the conclusion that non-material depreciation is exclusively labor depreciation.

Although Mr. Hatcher has two decades of experience adjusting property insurance claims, Mr. Hatcher has never adjusted claims for Allstate and cannot "speak to what Allstate does" with respect to equipment costs and market conditions components of non-material depreciation.    (Doc. 119-24 at 21). Accordingly, Mr. Hatcher cannot provide a reliable opinion about how frequently or infrequently Allstate adjusters depreciate equipment costs and market conditions.

With respect to the "spot check" of sample claims, Mr. Hatcher reviewed 44 sample class claims.  (Doc. 119-24 at 23).  Of those 44 claims, 23 had depreciation applied.  (Doc. 119-24 at 23–24).  Of the 23 claims that had depreciation applied, Mr. Hatcher states that six had zero values for market conditions and equipment depreciation.  (Doc. 119-24 at 25–26).  Mr. Hatcher "took that to mean that none of [the class claims] had" market conditions and equipment depreciation applied. (Doc. 119-24 at 25).  This conclusion is problematic for at least two reasons.

First, Mr. Hatcher's own testimony undermines his ability to quantify the specific value assigned to any of the three components of non-material depreciation for the claims he reviewed.  For example, Mr. Hatcher stated that the reports he examined did not isolate labor depreciation from the other non-material components.  (Doc. 119-24 at 26).  In fact, Mr. Hatcher testified that the only way to isolate the labor component from equipment and market conditions and confirm those amounts is for Xactware, Xactimate's parent company, to provide that information which has not been done for the class claims in this case.  (Doc. 119-24 at 26–27).   Therefore, Mr. Hatcher does not adequately explain how he was able to conclude that six of the sample claims had zero values for market conditions and equipment depreciation.   This analytical gap compromises the reliability of Mr. Hatcher's conclusion.

Second, and independently, a finding that approximately 25% of the sample claims where depreciation was applied (six of 23) did not have values for equipment and market conditions cannot meaningfully predict that the remaining 75% of the claims (17 of 23) likewise would have zero values for those non-material depreciation components.  Moreover, Mr. Hatcher offers no basis for his assumption that the claims he reviewed are representative of the class claims.

 Mr. Brasher contends that if Mr. Hatcher had data for the class claims from Xactware in the company's proprietary .ESX format, then Mr. Hatcher could run a

variation report and identify any claims that had market conditions and equipment depreciation applied.  (Doc. 91-1 at 15) (citing Doc. 119-24 at 21).  However, this assertion is belied by Mr. Hatcher's own testimony that the .ESX data does not contain labor depreciation amounts, only non-material depreciation.  (Doc. 119-24 at 25).  And again, by Mr. Hatcher's own admission, non-material depreciation includes labor and two other components.  Therefore, even if he had the .ESX files, Mr. Hatcher could not determine the amount of labor depreciation applied to each claim.

This leaves Mr. Hatcher's opinion that Xactware has the ability to isolate the amount of labor depreciation applied on a particular claim.  (Doc. 119-24 at 25).  Mr. Hatcher's opinion is based exclusively on the representations made by an Xactware employee.  (Doc. 119-24 at 25, 29).  But this hearsay statement is undermined by other undisputed evidence.  For instance, Mr. Hatcher testified that despite having the purported ability to provide labor depreciation amounts for the class claims, Mr. Hatcher has not asked Xactware to do so, and he personally is unaware if the company ever has done so.  (Doc. 119-24 at 25).  In addition, the hearsay statement lacks reliability because as Mr. Hatcher acknowledges, the .ESX Xactimate files that contain raw data do not isolate labor depreciation amounts from equipment costs and market conditions.  (Doc. 119-24 at 25).  And Mr. Hatcher offers no evidence about his contact's familiarity with Xactimate files or

on what basis this individual claims that Xactware can provide isolated labor amounts when the company's files do not identify that information.

Because Mr. Hatcher's opinions about the amount of labor depreciation applied to the class members' property damage claims do not pass *Daubert* muster, the court **GRANTS** Allstate's motion to exclude Mr. Hatcher's testimony on that basis.

ii.    <u>Jason Wells</u>

In support of his motion for class certification, Mr. Brasher relies on opinion testimony from certified public accountant Jason Wells regarding a formula for the determination of the class members' economic damages.  (Doc. 119-26 at 5; Doc. 119-27 at 1).

Allstate argues that Mr. Wells' calculations are unreliable because his opinion is based on Mr. Hatcher's unreliable opinion.  (Doc. 107 at 28–30).  The court agrees.

In creating his formula and calculating the amount of economic damages for sample class claims, Mr. Wells relied on Mr. Hatcher's report and opinion that non-material depreciation is entirely labor cost.  (Doc. 119-27 at 2).  In addition, Mr. Wells relied on Mr. Hatcher's report for the labor depreciation numbers that he included in his calculations.  (Doc. 119-26 at 5–6).

Because the court has found that Mr. Hatcher's opinion about the amount of labor depreciation of each class claim is unreliable, Mr. Wells' opinion also is inadmissible.  *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1294 (11th Cir. 2005) (affirming district court's exclusion of expert testimony when that testimony was based on unreliable opinions of another expert).

Therefore, the court **GRANTS** Allstate's motion to exclude Mr. Wells' testimony, to the extent it is based on Mr. Hatcher's unreliable opinion.[4]

### b.    *Mr. Brasher's Motion to Exclude Expert Opinions and Testimony of Don Odom (Doc. 78)*

Don Odom is Allstate's corporate representative.  Mr. Brasher deposed Mr. Odom in that capacity on September 26, 2019.  (Doc. 119-19).  On December 13, 2019, Allstate designated Mr. Odom as a non-retained expert and stated that he is expected "to testify as to the facts and opinions expressed in his deposition and within the scope of topics in his deposition notice, including but not limited to the individual nature of RCV claims and Allstate's inability to identify labor depreciation."  (Doc. 119-28 at 2).

Mr. Brasher seeks to exclude Mr. Odom's opinion testimony on two grounds.  First, Mr. Brasher argues that Mr. Odom does not qualify as a non-

---

[4] Allstate also argues that Mr. Wells' opinion concerning a class members' date of loss for purposes of calculating interest on any damages award lacks a reliable methodology.  (Doc. 107 at 27–28.  The court need not resolve that issue because Mr. Wells' formula for calculating the amount of damages is unreliable as it based on Mr. Hatcher's unreliable labor depreciation figures.

retained expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(C) and therefore, the court should exclude his opinion testimony because he failed to provide a written report. (Doc. 78-2 at 10–15). Second, Mr. Brasher argues that Mr. Odom's purported opinion testimony does not satisfy a *Daubert* analysis. (Doc. 78-2 at 15–25).

The court is not persuaded by Mr. Brasher's first argument. Federal Rule of Civil Procedure 26(a)(2) requires that an expert provide a report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Mr. Odom is not specially employed or retained to provide expert testimony in this case, and his duties as an Allstate employee do not regularly involve giving expert testimony. (*See* Doc. 119-19 at 3, 5). Accordingly, the court will not exclude Mr. Odom's purported opinion testimony for failure to provide a written report.

As to Mr. Brasher's second argument that Mr. Odom's opinions do not pass a *Daubert* test, the court need not address the issue at this stage because the court has not relied on any opinions from Mr. Odom for purposes of ruling on class certification. The court has relied only on Mr. Odom's fact testimony in his capacity as Allstate's corporate representative.

Therefore, the court **DENIES** Mr. Brasher's motion to exclude Mr. Odom's opinion testimony for failure to provide a written report. The court **DENIES** as **MOOT** Mr. Brasher's motion to exclude Mr. Odom's opinion testimony, to the extent he challenges the testimony under *Daubert*. Mr. Brasher may renew his *Daubert* challenges to Mr. Odom's testimony, if necessary, at a later stage in these proceedings.

> **c.** **Mr. Brasher's Motion to Exclude Expert Opinions and Testimony of Victoria Roberts (Doc. 77)**

In opposition to class certification, Allstate relies on the opinions of Victoria Roberts. (Doc. 119-30).

Ms. Roberts is an attorney and principal at Roberts Claim Consultants, LLC in Scottsdale, Arizona. Allstate hired Ms. Roberts "to review and provide opinions as to whether Allstate's investigation, evaluation, and handling of Donald Brasher's property damage claim is consistent with industry standards" and "to look at what kind of review would be required to retroactively look at thousands of claims tendered under both Actual Cash Value and Replacement Cost Value policies in order to re-calculate Actual Cash Value if labor was not depreciated." (Doc. 119-30 at 1). Ms. Roberts also examined "whether Allstate's claim handling practices were reasonable and complied with industry standards." (Doc. 119-30 at 1).

In its brief in opposition to class certification, Allstate cites Ms. Roberts' report or testimony only four times. (Doc. 74 at 11, 13, 15, 20). In ruling on class certification, the court has not relied on any of the cited testimony from Ms. Roberts. Accordingly, the court **DENIES** as **MOOT** Mr. Brasher's motion to exclude Ms. Roberts testimony, to the extent he asks the court to exclude the portions of Ms. Roberts' testimony upon which Allstate relies to oppose class certification. Mr. Brasher may renew his *Daubert* challenge to Ms. Roberts' opinions, if necessary, at a later stage in these proceedings.

2.     Motions to Strike

a.     ***Allstate's Motion to Strike Paragraphs 6 and 7 of Colby Graff's Declaration (Doc. 72)***

In support of his motion for class certification, Mr. Brasher submitted a declaration from Colby Graff, an Account Manager for Xactware. (Doc. 119-32).

Allstate moves to strike paragraphs 6 and 7 of Mr. Graff's declaration. (Doc. 72). The court has not relied on the challenged portions of Mr. Graff's declaration for purposes of resolving Mr. Brasher's motion for class certification. Therefore, the court **DENIES** as **MOOT** Allstate's motion to strike paragraphs 6 and 7 of Mr. Graff's declaration.

### b.   *Mr. Brasher's Motion to Strike Paragraphs 9, 10, 11, and 13 of Don Odom's Declaration*

In support of its opposition to class certification, Allstate submitted a declaration from Mr. Odom.  (Doc. 119-31).

Mr. Brasher moves to strike paragraphs 9, 10, 11, and 13 of Mr. Odom's declaration because he claims that these paragraphs contain new, distinct, and contradictory opinions.  (Doc. 85-2 at 3–10).  Mr. Brasher also claims he is prejudiced by Mr. Odom's declaration.  (Doc. 85-2 at 10–12).

Having carefully reviewed Mr. Odom's deposition and his declaration, the court finds that Mr. Odom's declaration does not offer new, distinct, or contradictory opinions.  Rather, Mr. Odom offers additional detail that clarifies the substance of his deposition testimony.  Nevertheless, the court has not relied on the challenged portions of Mr. Odom's declaration for purposes of ruling on class certification.  Therefore, even if the declaration contains new or contradictory opinions, Mr. Brasher is not prejudiced at this juncture by the opinions.  Accordingly, the court **DENIES** as **MOOT** Mr. Brasher's motion to strike paragraphs 9, 10, 11, and 13 of Mr. Odom's declaration.  Again, Mr. Brasher may renew specific challenges to Mr. Odom's opinions, if necessary, at a later stage in these proceedings.

## III.   CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 governs the standard for class certification.  "As an initial matter, a plaintiff seeking to represent a proposed class must demonstrate that the class is 'adequately defined and clearly ascertainable.'" *Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1039 (11th Cir. 2019) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)).  The class representative must then satisfy the four Rule 23(a) prerequisites by demonstrating that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  *Id.*

In addition to meeting the Rule 23(a) requirements, "the plaintiff must show that the proposed class satisfies at least one of the class types under Rule 23(b)." *Sellers*, 941 F.3d at 1039.  Mr. Brasher seeks class certification under Rule 23(b)(2), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

As the party seeking class certification, Mr. Brasher has the burden of proving "that the requirements [of Rule 23] are '*in fact*' satisfied." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). "[I]f doubts remain about whether the standard is satisfied," then the court should deny class certification. *Id.* at 1233.

The court's analysis of the Rule 23 factors "will frequently entail overlap with the merits of the plaintiff's underlying claim." *Comcast Corp.*, 569 U.S. at 33–34 (quotation marks omitted); *see Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003) ("Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied."). For example, "if a question of law or fact is relevant to [the Rule 23] determination, then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's factor." *Brown*, 817 F.3d at 1234 (emphasis omitted).

As explained below, Mr. Brasher cannot establish that common issues predominate over individual questions. Therefore, the court begins and ends its inquiry into the propriety of class certification with a predominance analysis under Rule 23(b)(3).

Rule 23(b)(3) requires the court "to consider whether the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Sellers*, 941 F.3d at 1040 (quotations omitted).  "To determine whether the requirement of predominance is satisfied, a district court must first identify the parties' claims and defenses and their elements." *Brown*, 817 F.3d at 1234.  "The district court should then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial." *Id.*  "Common questions are ones where the same evidence will suffice for each member, and individual questions are ones where the evidence will vary from member to member." *Id.* (quotations and alteration omitted).

"After identifying the common and individual questions, the district court should determine whether the common questions predominate over the individual ones." *Brown*, 817 F.3d at 1234–35.  "Common issues can predominate *only* if they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (quotations omitted).  Alternatively, "common issues will not predominate over individual questions if, as a practical matter, the resolution of an

overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Id.* (quotations omitted).

As an initial matter, when examining whether class treatment is proper for breach of contract claims, the Eleventh Circuit has "required at the threshold that all of the subject contracts be 'materially similar.'" *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) (quoting *Allapattah Servs., Inc., v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003)).

Allstate claims that Mr. Brasher cannot establish that the nine policies at issue are "materially similar" because seven of the nine policies are "replacement cost value" policies; two of the policies are "actual cost value" policies; and some, like Mr. Brasher's, are "replacement cost value" policies with "actual cash value" endorsements. (Doc. 74 at 31). Still, all of the policies at issue state that payments for covered property losses will be paid "on an actual cash value basis," and none define the terms "actual cash basis" or "depreciation." (Doc. 119-1 at 15; Doc. 119-2 at 15–16; Doc. 119-3 at 12; Doc. 119-4 at 15; Doc. 119-5 at 12; Doc. 119-6 at 18; Doc. 119-7 at 9; Doc. 119-8 at 10; Doc. 119-9 at 13). And all of the potential class policies include identical language concerning actual cash value payments for covered losses. Therefore, as it relates to the general allegation that Allstate breached the policies by depreciating labor costs from the actual cash

value payments due under the policies, the operative provisions are materially similar and do not vary in substance.

But despite the materially similar language concerning actual cash value payments under the policies, it is clear that the individual inquiries necessary to establishing both the elements and defenses of the breach of contract claim preclude certification of Mr. Brasher's proposed class.

The class breach of contract claim requires proof of four elements: "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *City of Gadsden v. Harbin*, 148 So. 3d 690, 696 (Ala. 2013).

Mr. Brasher submitted no evidence or argument about whether the first and second elements of the breach of contract claim involve common or individual questions. Whether a class member had a valid policy in effect at the time he or she filed a property damage claim cannot be established through generalized proof. In addition, the inquiry into whether class members can establish their own performance under the relevant contract would almost certainly be an individualized one. Therefore, the first two elements of the breach of contract are individual issues.

With respect to the third element of the class claim, Mr. Brasher first contends that the policies can be examined at once to determine if the actual cash

value payment provision in each policy is ambiguous under Alabama law.   Mr. Brasher contends next that he can prove Allstate's breach of the relevant policies on a class-wide basis through generalized proof of Allstate's common practice of labor depreciation.   (Doc. 67 at 33–34).   The court has doubts about the merits of these arguments.  ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████, it is questionable whether common proof exists to establish that Allstate breached every class policy.   Moreover, even if breach is a common question, a number of individual questions so clearly predominate over this issue that class certification is not appropriate.

The first individual questions relate to damages.   Although individualized damages do not always defeat predominance, they can, if, as here "computing them will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable." *Brown*, 817 F.3d at 1240 (quotation marks omitted).

The first hurdle for Mr. Brasher is that his damages model does not "establish that damages are capable of measurement on a classwide basis." *Comcast Corp.*, 569 U.S. at 34.   If class members were to prevail on their breach of contract claims, they would only be entitled to damages resulting from depreciated labor costs.   As explained above, Mr. Brasher's damages model is

based on Mr. Hatcher's unreliable opinion that non-material depreciation consists entirely of labor cost and on Mr. Wells' calculations based on Mr. Hatcher's methodology. *See supra* pp. 13–19. Because Mr. Brasher has not shown that he can isolate the amount of labor depreciation withheld from each class claim, he has offered no "formula . . . or other easy or essentially mechanical method" for computing damages. *Sacred Heart*, 601 F.3d at 1179 (quotation omitted). Therefore, under the circumstances of this case, individualized damages are too complex to give way to any common issues.

Moreover, even if the court were to accept Mr. Hatcher's opinion that non-material depreciation is exclusively labor cost, individual damage issues would arise with respect to class members who filed claims based on estimates completed before 2013 or 2014. Prior to 2013 or 2014, Allstate used a version of Xactimate that did not have separate settings for material and non-material depreciation. (Doc. 119-31 at ¶ 12). Mr. Hatcher's proposed damages model determines the amount of labor depreciation in each claim by comparing estimates in Xactimate with and without the non-material depreciation setting applied. (Doc. 119-25 at 7–8). Thus, even if Mr. Hatcher's methodology for determining labor depreciation was reliable, his methodology would not identify the labor depreciation amounts for class members who filed property damage claims while Allstate used the previous version of Xactimate that contained only one depreciation setting.

The second hurdle for Mr. Brasher is that for class members who had ACV policies or for class members with ACV endorsements to RCV policies, individual questions arise concerning whether, and to what extent, these policyholders suffered damage for any alleged breach of contract.  Citing Mr. Brasher's policy, Allstate claims that individualized analysis is required because its obligation under the ACV policies and ACV endorsements is limited to a calculation based on the "amount necessary to repair or replace the property with like kind and quality." (Doc. 74 at 27) (citing Doc. 119-10 at 53).[5]  This language appears on the policy endorsement page to Mr. Brasher's policy.  The provision states that the actual cash value payment "will not exceed the smallest of: a) the actual cash value of the damaged, destroyed or stolen property at the time of loss; b) the amount necessary to repair or replace the damaged, destroyed or stolen property with other of like kind and quality; or c) the limit of liability applicable to the damaged, destroyed or stolen property."  (Doc. 119-10 at 53)

---

[5] Allstate argues that the issue concerns the class members' ability to establish breach or alternatively, that the issue relates to Allstate's defense that it paid a policy holder's full cost of repair.  (Doc. 74 at 26–27, 30).  The court disagrees.  The court finds that the issue is properly characterized as one of damages. If depreciating labor costs is wrongful under Alabama law, then Allstate breached the terms of the policies by depreciating those amounts from policy holders' ACV payments.  The question is whether an ACV policyholder was damaged by the breach.  As stated below, if a class member had an ACV policy or an ACV endorsement and completed repairs for less than the amount of his or her ACV payment, then the class member cannot establish the fourth element of the breach of contract claim.  Regardless of how the issue is framed, the result is the same: the question involves an individual inquiry.

This language is identical to that contained in the two ACV policies.  Both the Standard Mobilehome Policy and the Deluxe Mobilehome Policy state that "[i]n making an actual value settlement, payment will not exceed the smallest of the following amounts: a) The actual cash value at the time of the loss; b) The amount necessary to repair or replace the damaged property; or c) The limit of liability applying to the property."  (Doc. 119-7 at 9; Doc. 119-8 at 10).

Because the proposed class excludes policy holders who received policy limits, policy holders with ACV policies or ACV endorsements to RCV policies would be limited to recovering either the actual cash value of the amount necessary to repair or replace their property.  Thus, assuming that depreciating labor breaches the policies, if a class member with one of these policies made repairs for less than their ACV payment, then the class member would unable to establish damage caused by the breach.  This inquiry into whether these class members made repairs and for what amount is an individual damages issue, which combined with Mr. Brasher's lack of a reliable damages model, precludes class certification.

Another individual issue arises with respect to Allstate's defenses to the breach of contract claim.  "[I]ndividual affirmative defenses generally do not defeat predominance," but they can if they "raise complex, individual questions" or if they are "coupled with several other individual questions." *Brown*, 817 F.3d at 1240–41; *see also Sacred Heart*, 601 F.3d at 1170 ("[I]f the defendant has non-

frivolous defenses to liability that are unique to individual class members, any common questions may well be submerged by individual ones."). To make that determination, the court must consider "the type of evidence that the parties will submit to prove and disprove" a particular defense. *Id.* at 1240.

Allstate contends that it intends to raise the following affirmative defenses against every class member: accord and satisfaction, offset, set off, and recoupment. (Doc. 74 at 30). Allstate has not explained how offset, set off, and recoupment apply to the class breach of contract claim. However, to the extent offset, set off, and recoupment are non-frivolous affirmative defenses, these defenses would require individual proof about whether Allstate undertook a joint obligation with respect to a class member which would entitle Allstate to an offset or set off or whether the circumstances surrounding an individual class member's property damage claim demonstrates that Allstate is entitled to recoup an amount of damages based on some reciprocal obligation that the class member owes to Allstate.

Allstate's accord and satisfaction affirmative defense likewise is an individual question. Under Alabama law, "[a]n accord and satisfaction is an agreement reached between competent parties regarding payment of a debt the amount of which is in dispute. There can be no accord and satisfaction without the intentional relinquishment of a known right." *Newson v. Protective Indus. Ins.*

*Co. of Ala.*, 890 So. 2d 81, 87 (Ala. 2003).  "Like any other contract, a valid accord and satisfaction requires consideration and a meeting of the minds regarding the subject matter."  *Id.*  Allstate's accord and satisfaction defense would require an individual inquiry into any agreement that a class member reached with Allstate concerning the ACV payment that Allstate owed to the class member.  In addition, individual proof would be required to establish that a class member knowingly relinquished his or her right to recover some other amount to which he or she otherwise would have been entitled but for the agreement.

In sum, the court cannot find that any common issues regarding the class members' ability to establish liability predominate over the individual issues concerning the existence of valid contracts; class members' own performance under the policies; class members' damages; and Allstate's affirmative defenses.  Accordingly, Mr. Brasher cannot establish that the class breach of contract claim satisfies Rule 23(b)(2)'s predominance requirement.

## IV.   CONCLUSION

For the reasons stated above, the court **GRANTS IN PART** and **DENIES IN PART** Allstate's motion to exclude the opinion testimony of Mr. Hatcher and Mr. Wells.  (Doc. 75).  The court **DENIES** as **MOOT** Mr. Brasher's motion to exclude to the opinion testimony of Mr. Odom.  (Doc. 78).  The court **DENIES** as **MOOT** Mr. Brasher's motion to exclude Mr. Roberts' opinions, to the extent Mr.

Brasher challenges the cited portions of her testimony (Doc. 79).  The court

**DENIES** as **MOOT** Allstate's motion to exclude paragraphs 6 and 7 of Colby

Graff's declaration.  (Doc. 72).  The court **DENIES** Mr. Brasher's motion to strike

paragraphs 9, 10, 11, and 13 of Mr. Odom's declaration.  (Doc. 82).

And the court **DENIES** Mr. Brasher's motion for class certification.  (Doc.

64).

**DONE** and **ORDERED** this August 12, 2020.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE